DAVID HICKEY, JR., Plaintiff-Appellant, v. PHYLLIS HICKEY, Defendant-Appellee.

(No. 60691;

First District (2nd Division)—August 5, 1975.

258

Dennis Buyer, of Buyer, Scherb & Zoloto, of Chicago, for appellant.

Morris L. Simons, of Chicago, for appellee.

Mr. JUSTICE STAMOS delivered the opinion of the court:

This appeal arises from an order of the circuit court which modified, pursuant to petition, a judgment for divorce entered in the Circuit Court of Cook County on October 7, 1970. Defendant, Phillis Hickey, filed an amended post-judgment petition seeking permission to remove the parties' minor child to the State of Arizona, an increase in alimony and child support, and reasonable attorneys' fees. After a hearing, the trial court ordered that: (1) defendant be given leave to remove the parties' 5-year-old minor child to the State of Arizona; (2) plaintiff pay to defendant increased alimony in the amount of $1,000 per month and continue to pay child support of $500 per month; and (3) plaintiff pay defendant's attorneys' fees in the amount of $1,250. On appeal, plaintiff contends that the trial court abused its discretion in granting the above relief to defendant.

In 1970, plaintiff, David Hickey, Jr., obtained a divorce from defendant, Phyllis Hickey. Under the judgment, which incorporated the settlement agreement of the parties, Phyllis was to receive $500 per month alimony, $500 per month child support, the 1968 Buick automobile she was driving, and one-half of the proceeds from the sale of the marital home. Defendant was awarded custody of their minor child, Patrick.

The parties had been married for 23 years and have three children, two of whom are emancipated and one, Patrick, who was 2 years old at the time of their divorce. David, for the last 14 years, has been the manager of a State Farm Insurance Company agency. While they were married, Phyllis, who is 48 years old, did all of David's office work. Since she became pregnant with Patrick, she has not worked, and has no source of income other than her alimony. Her only savings is a $750 mutual fund and she enumerated her monthly expenses at $1,393.

David remarried and owns a condominium in which he has $10,000 equity. He also owns a parcel of land in Wisconsin for which he paid $12,000. He is building a summer home on the Wisconsin parcel for a projected cost of $60,000. He owns land in Florida for which he paid

$6,000 and has stock worth $8,000. He has two cars, a 1965 Mustang and a 1974 Cadillac. Both he and his wife recently vacationed in France. In 1970, David's gross earnings were $57,069, his adjusted income was $41,832, and his after-tax income was $30,124. In 1973 his gross income was $90,554,[1] his adjusted gross income was $70,135, and his after-tax income was $46,710. Included in David's 1973 business expenses were $977 for event tickets, $2,227 for Christmas gifts, $3,900 for entertainment, $1,120 for conventions, and $2,961 for automobile expenses. Plaintiff testified that his income for the year 1974 would be approximately $10,000 less than 1973 due to a decline in business, thus resulting in an adjusted gross income of $60,000.

Defendant introduced into evidence the Consumer Price Index prepared by the United States Department of Labor. The Consumer Price Index stood at 118.4 in October of 1970 and at 142.1 in March of 1974.

Patrick was 2 years old at the time of the judgment for divorce and 5½ at the time of the hearing. When he was 4, he commenced to be treated by an allergy specialist for chronic asthma. Patrick is severely sensitive to molds, several animal dander, house dust, feathers and possibly egg yolk, milk, and his own infections and their by-products. Patrick's asthma attacks last from 1 to 5 hours, and within a 5-month period he had missed 16 days of school because of his attacks. Patrick requires medication; previously, he was receiving three shots a week, but at the time of the hearing, he was receiving two shots a week. Drugs administered to the child have been Benxlin, Dimetane, Tylenol, Bronkolizir, Principen, Quadrinal, Ampicillian, Decomamine, Marax, Erthromycin, Susphrine, and Sympatomine. November and May are particularly bad months in terms of the frequency and severity of the attacks, while September and August are good months.

Patrick has visited Arizona on three different occasions, the last being for a period of 12 days. While he was there, he had no asthma whatsoever, even though he was active. Phyllis has two sisters in Arizona whom she would be close to in case of emergencies.

Dr. Lawrence Elegant testified on behalf of plaintiff. After testifying to his education and qualification as an allergist, the doctor stated that the he has been treating Patrick since January of 1973 for asthma. Immunotherapy was begun and the episodes of asthma are much less severe now than they had been in the past. The witness stated that a number of factors affect asthma, namely, climate, infections, emotional problems, and barometric pressure change. He was familiar with the environmental

---

[1] The computed amounts do not include the $16,000 earned in 1973 by David's present wife.

conditions of Arizona and could not state with certainty that Patrick would do better in Arizona than he would here; on the other hand, "he wouldn't do any worse." When asked by the court whether doctors have sent people to Arizona to obtain relief from an asthmatic condition, the witness responded by stating that the theory was of questionable validity.

On cross-examination, the witness admitted a causal relationship between moisture and the production of mold, but added that certain molds thrive in a hot and dry climate. In response to a hypothetical question, the witness stated that a 2-week stay in Arizona is too short a time to test the effect of the Arizona climate on the child's asthmatic condition. The doctor explained that had the child remained in Arizona for a 6-month period, some significant comparisons could be made. Again, pursuant to questions by the court, the witness stated that climate is an important factor in treating chronic asthma, that temperature, humidity, and barometric changes are all important factors, and that there is a difference between the general climate in the Chicago area and that of Arizona.

The trial court found that it would be in the best interests of the minor child to allow his removal to Arizona. Instead of awarding an increase in both alimony and child support as requested, the court awarded an increase of $500 per month in alimony alone.[2] Additionally, David was ordered to pay Phyllis' attorneys' fees in the sum of $1,250.

■■  Plaintiff's initial contention is that defendant failed to demonstrate that the removal of the minor child to Arizona was in the best interests of the child. Pursuant to statute, the trial court is empowered to allow any party having custody of the child to remove him from Illinois whenever such removal is in the best interests of the child. (Ill. Rev. Stat. 1973, ch. 40, par. 14; *Reddig v. Reddig*, 12 Ill.App.3d 1009, 299 N.E.2d 353.) The trial court's determination of what is in the best interests of the child should not be reversed unless it is clearly against the manifest weight of the evidence and it appears that a manifest injustice has occurred. *Rosenberger v. Rosenberger*, 21 Ill.App.3d 550, 316 N.E.2d 1.

The evidence reflects that subsequent to the award of custody in 1970, Patrick developed chronic asthma and was severely sensitive to molds and various other substances. That his illness has substantially intruded upon his life is amply borne out by his absenteeism at school, the limitation of his activities, and the abundance of drugs which are administered to him. Dr. Elegant admitted that climate is an important factor in the

---

[2] The expressed reason for the decision was that the increase was to be taxable to Phyllis and deductible to David, since the economic effect would be for a substantial portion of the increase to come from tax savings.

treatment of chronic asthma, and in this regard, the record reveals that the frequency of Patrick's attacks are greater in damp months than they are in dry months. On the three occasions when Patrick had been in Arizona, he has been completely free of asthmatic symptoms. Based on this evidence, we find no error in the trial court's decision.

We recognize that the evidence does not conclusively demonstrate that Patrick's asthmatic condition will improve as a result of the Arizona climate. In his opinion, Dr. Elegant stated that sending patients to Arizona for asthmatic relief was of questionable validity. The expert testimony did indicate, however, that the period of time in which Patrick had been exposed to the climate of Arizona was not long enough to make any meaningful correlations,[3] and that there was a causal relationship between moisture and the production of mold. The doctor testified that although he could not state with certainty that Patrick's condition would improve in Arizona, he did render an opinion that Patrick would do no worse in Arizona. It is not within the province of this court to judge the ultimate medical correctness of the trial court's decision. We need only adjudge whether the trial court's determination—that the best interest of the child would be served by his removal to Arizona—is manifestly against the weight of the evidence. In light of the evidence which indicated that Patrick's asthmatic condition would improve in a dry climate, we find no reason for substituting our judgment for that of the trial court's.

■■ It is next contended that the award of increased alimony was unsupported by the evidence and constituted an abuse of discretion. We disagree. Section 18 of the Divorce Act provides that the court may, upon application, make such alterations in the allowance of alimony and child support as "shall appear reasonable and proper." (Ill. Rev. Stat. 1973, ch. 40, par. 19.) Under this section, decisional law has consistently held that before a modification of alimony or child support will be allowed, it must be shown that circumstances and conditions have changed materially since the entry of the original decree. (*Lacey v. Lacey*, 24 Ill. App.3d 776, 321 N.E.2d 524.) Some actual change in the circumstances must be shown, and consideration should be given to the property and income of the parties, their ages, health and social conditions, and whether there are children dependent upon them for support. (*Jacobs v. Jacobs*, 328 Ill.App. 133, 65 N.E.2d 588.) In the application of these criteria, both the form and the amount of alimony rest primarily in the discretion of the trial court. *Canady v. Canady*, 30 Ill.2d 440, 197 N.E.2d 42.

In the present case, the trial court determined that it would be eco-

---

[3] Patrick has been residing in Arizona now for approximately 1 year.

nomically advantageous to award the entire increase in the form of alimony rather than allocate an amount to both alimony and child support.[4] The trial court, however, in awarding the increase, expressly considered the additional sums which would be required for the support of Patrick. Patrick was of school age at the time of the hearing and would be attending parochial school in Arizona. The expenses and costs of Patrick's parochial education were charged to Phyllis. Thus, the court placed a pecuniary value upon the change of circumstances in Patrick's educational needs. Additionally, specific evidence was adduced demonstrating that between the date of the judgment for divorce and the post-judgment hearing, there was a 20% reduction in the value of the alimony and child support that Phyllis was receiving from David. The substantial change in the cost of living, in conjunction with the increased needs of Phyllis and David, was properly taken into consideration by the trial court. *Arnold v. Arnold*, 332 Ill.App. 586, 76 N.E.2d 335; see *Blowitz v. Blowitz*, 8 Ill.App.3d 25, 289 N.E.2d 52.

■■ In contrast with the fixed income received by Phyllis, the evidence shows that David's earnings have substantially increased. After deducting the amount of income attributable to his present wife. David's adjusted gross income has risen 68% from 1970 to 1973, while his net after-tax income has risen 55%. David's property and financial affairs reflect a standard of living commensurate with his increased income. From an examination of the foregoing, we can only conclude that the evidence supports the finding that there has been a material change in circumstances in both the needs of Phyllis and Patrick and in David's ability to meet those needs. We also conclude that plaintiff has failed to demonstrate an abuse of discretion in the amount of alimony awarded.

■■ It is lastly contended that the trial court abused its discretion in awarding attorneys' fees to defendant in the sum of $1,250. The fee allowed by the trial court must be permitted to stand unless it is shown that the award amounted to an abuse of discretion. (*Ulm v. Ulm*, 132 Ill.App.2d 726, 270 N.E.2d 581.) The qualifications of defendant's attorney, Morris L. Simons, were admitted by plaintiff. He estimated that he had devoted between 25 and 30 hours to the preparation and hearing on the petition. He had first spoken to Phyllis in February of 1972, and thereafter had written to David, had discussions with David's attorney, and participated in a joint meeting between the parties and the attorneys.

---

[4] The entire amount of the increase is thus deductible by David on his Federal income tax return. In light of his high tax bracket, the net after-tax effect of the increase is substantially less than the $500 per month award. Phyllis, on the other hand, must pay tax on the entire increase which, at present rates, raises her Federal income tax from approximately $55 per month to $182 per month.

He was present at Phyllis' deposition and took the deposition of David. He caused David's income tax returns to be produced and subsequently analyzed them. The record further shows counsel's preparation of the pleadings and various court appearances in connection with the setting of the hearing. The hearing itself took place on two separate days and was followed by post-trial motions and argument. The trial court was familiar with the skill and reputation of counsel, and given the nature of the controversy, the amount involved, the time spent, and the results achieved, an award of $1,250 attorneys' fees was well within the discretional authority of the trial court.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

DOWNING, P. J., and LEIGHTON, J., concur.