FREDA R. QUIRIN, Plaintiff-Appellee, *v.* ROGER J. QUIRIN, Defendant-Appellant.

Fifth District   No. 76-506

Opinion filed June 30, 1977.

Ralph Derango, of Belleville, for appellant.

No brief filed for appellee.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant Roger J. Quirin appeals from an order of the Circuit Court of St. Clair County modifying the custody provisions of a divorce judgment so as to permit his ex-wife, plaintiff-appellee Freda R. Rhodes (formerly Freda R. Quirin), to move with their children to the State of Arkansas.

The parties were married in 1968, and have two sons, born in 1970 and 1971. In July 1974, plaintiff was granted a divorce on grounds of mental cruelty. She was awarded custody of the children "with privilege to remove same to the State of Arkansas." The judgment of the court provided that defendant was to have "periods of custody" of the children for four weeks during the summer and one week during the Christmas season, and "all reasonable visitation" at plaintiff's home. Defendant was required to receive and return the children to plaintiff's home at the beginning and end of the summer and Christmas periods, and was forbidden to remove the children from plaintiff's home on other occasions without her permission.

In October 1974, defendant filed a petition for change of custody. The court denied the petition, but set out specific hours each weekend during which he could visit the children and forbade plaintiff to remove them permanently from this State without leave of court. In July 1976, plaintiff petitioned the court for such leave, alleging that she had remarried, that

her husband was employed in Little Rock, Arkansas, and that she and her husband desired to reside permanently in Arkansas.

At the hearing on the petition, plaintiff testified that she had remarried in April 1976, that she and the children and her new husband had been residing together in O'Fallon, Illinois, and that her husband, who had recently been discharged from the armed services, had found a factory job in Arkansas paying $3.50 per hour. She testified that her husband had stayed with her parents in Arkansas while looking for employment, and had just rented a trailer for the family to live in. On cross-examination it was brought out that she had met and married defendant after moving to Illinois, that the children were born in Illinois, and that her new husband was a lifelong resident of Illinois. She conceded that defendant loved the children and had maintained interest in them, and that they had affection for him. Asked by defense counsel whether her husband's securing of employment in Arkansas was not just an attempt to get the children out of the State, she responded:

"A. No, sir, he likes to go fishing and hunting and my mom and dad always go.

Q. So you feel his interest in fishing and hunting should dominate over your [former] husband's right to have the children on the weekend and [the] benefit those children derive out of being with him every weekend, is that it?

A. Yes, sir."

On redirect examination, she maintained that her ex-husband had tried to buy the children's love by bringing them toys. She said that she objected, "[i]n a way," to his visiting the children, but would not interfere with court-ordered visitation.

Defendant testified that he objected to the removal to Arkansas; "basically because I love my kids and they don't want to go to Arkansas." He said that his children, whom he had been seeing every weekend without fail, had told him that they would rather stay with him. He did not think it would be in their best interest to move to Arkansas. He said that he worked in a machine shop in Belleville and was entitled to 1½ week's vacation each year. He would not be able to make frequent trips to Arkansas, although he would attempt to visit the children whenever possible no matter where they and their mother resided.

At the close of the testimony, the court vacated the October 1974 order, reinstated the custody and visitation provisions of the original order granting the divorce in July 1974, and gave plaintiff permission to remove the children to Arkansas. Defendant filed a post-trial motion, alleging, *inter alia*, that plaintiff had concealed from the court the fact that one of the children had been under treatment at Cardinal Glennon Hospital in St. Louis for a birth defect, and that the removal of the child to Arkansas

would deprive him of the completion of this treatment, which would not be in his best interest. After a hearing, the court denied the motion and found that there was no just reason to delay an appeal. Ill. Rev. Stat. 1975, ch. 110A, par. 304(a).

On appeal, defendant contends that the decision of the court below was against the manifest weight of the evidence.[1]

■■■ Section 13 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 14) provides, insofar as here pertinent, that "[t]he court may grant leave, before or after decree, to any party having custody of the minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children." It is clear from this statutory provision, and from case law which antedates its addition to section 13 in 1959, that before a court can grant leave to remove children of divorced parents from this State, there must be a showing that the move would be in the children's best interests. (*Spencer v. Spencer*, 132 Ill. App. 2d 740, 270 N.E.2d 72 (1st Dist. 1971); *Schmidt v. Schmidt*, 346 Ill. App. 436, 105 N.E.2d 117 (2d Dist. 1952).) The burden of proof is, of course, on the party seeking judicial approval of the proposed removal. (*Martinec v. Sharapata*, 328 Ill. App. 339, 66 N.E.2d 103 (1st Dist. 1946).) The paramount question for the court's determination "is not what the parents wish, nor is it a question of who was right or wrong when the decree was entered, nor is it a question of punishing the father or mother; instead the real issue to be decided is what is for the best interests of the children." (*Reddig v. Reddig*, 12 Ill. App. 3d 1009, 1011, 299 N.E.2d 353, 355 (3d Dist. 1973).) The trial court's determination will not be reversed unless it is clearly against the manifest weight of the evidence and results in a manifest injustice. *Hickey v. Hickey*, 31 Ill. App. 3d 257, 333 N.E.2d 271 (1st Dist. 1975); *Rosenberger v. Rosenberger*, 21 Ill. App. 3d 550, 316 N.E.2d 1 (1st Dist. 1974).

We are compelled to agree with defendant that plaintiff utterly failed to meet her burden of proving that the removal to Arkansas would be in the best interests of the children. The petition did not so allege, nor did plaintiff introduce any evidence as to that paramount consideration at the hearing. She testified simply that she wanted to take the children with her and reside in Arkansas with her new husband, and that he was willing to share the responsibility of taking care of the children. In fact, the only evidence pertinent to what would be in the best interests of the children was offered by the defendant: that he and the children had a healthy relationship that would be disrupted, and that one of the children was receiving medical treatment that would be terminated, if plaintiff were

---

[1] Defendant also contends that, assuming *arguendo* that the move was in the best interests of the children, the court erred in failing to require plaintiff to post security and pay the transportation costs of visitation, and in failing to provide for visitation away from plaintiff's home. Because of the result reached, we need not address these issues.

permitted to take them to Arkansas. This evidence was not controverted by plaintiff.

■■ We are of the considered opinion that the mere desire of the parent having custody to move to another State, without more, is insufficient to establish that the move would be in the best interests of the children. (See *Reddig v. Reddig*.) Although we would be hesitant to hinder anyone from moving wherever his best opportunities for livelihood might be found, and taking his family with him (see *Spencer v. Spencer*, 132 Ill. App. 2d 740, 743, 270 N.E.2d 72, 74), we are not persuaded that this is such a case. Plaintiff's husband was not well established in Arkansas; in fact, plaintiff testified that only the day before the hearing he had rented a trailer in Arkansas, and she was not even certain where it was located. (*Cf. Schmidt v. Schmidt.*) Nor is there any indication that he could not have obtained in Illinois employment similar to that he had assertedly found in Arkansas.

■■■ We have said recently that the welfare of children of divorced parents usually requires that the parent who does not have custody be given liberal visitation rights, so that the children will not become estranged from that parent. (*Valencia v. Valencia*, 46 Ill. App. 3d 741, 360 N.E.2d 1384 (5th Dist. 1977); *McManus v. McManus*, 38 Ill. App. 3d 645, 348 N.E.2d 507 (5th Dist. 1976).) We conclude that the order of the court below would result in a manifest injustice by effectively depriving the children of a close relationship with their natural father, and was against the manifest weight of the evidence as to their best interests.

For the foregoing reasons, the order of the Circuit Court of St. Clair County that plaintiff be permitted to remove the children from this State is reversed.

Reversed.

CARTER, P. J., and EBERSPACHER, J., concur.