*In re* MARRIAGE OF BARBARA J. BURGHAM, Petitioner-Appellee, and DOUGLAS E. BURGHAM, Respondent-Appellant.
Fourth District   No. 15996

Opinion filed July 15, 1980.

Richard M. Joy, of Dobbins, Fraker & Tennant, P. C., of Champaign, for appellant.

Burt Greaves, of Greaves, Lerner & Gadau, of Champaign, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

We are concerned here with a request by a custodial spouse, divorced in this State, to permanently remove from this State the children over whom she was granted custody.

Petitioner, Barbara J. Burgham, was divorced from respondent, Douglas E. Burgham, in the circuit court of Champaign County on June 4, 1976, and was granted custody of their three children. Pursuant to subsequent proceedings, an order was entered by that court on August 2, 1979, which, among other things, transferred the custody of the parties' oldest child, Pamela, to respondent but permitted petitioner to permanently remove the parties' sons, Karl Douglas, aged 11, and Dale Eric, aged 9, from the State to accompany her to California. A timely motion by respondent which, among other requests, asked reconsideration of the permission to remove the children was heard and on November 21, 1979, an order was entered refusing to reconsider the authorization to remove.

Respondent appeals the grant of the authority to remove, asserting that (1) the trial court misunderstood the law, and (2) any conclusion that removal was in the best interests of the children was contrary to the manifest weight of the evidence.

At the time of the divorce and up to April 2, 1979, when the instant petition was filed, petitioner had lived in Champaign with the children. At the time of the divorce, respondent had been living in the Commonwealth of Virginia for about a year, and by the time of the instant petition, had remarried and was living in the State of New York. By the time that petition was heard on July 23, 1979, petitioner had taken the boys and moved to Santa Clara, California, where she had rented a house and taken a position with an insurance agency. The house was in a quiet residential area about four blocks from the boys' school. Her

testimony indicated that, from a financial standpoint, she would neither gain nor lose by the move. Her salary in her new job would be higher and some of her expenses would be less than in Champaign, but these advantages would be offset by the higher rent she would have to pay.

All evidence indicated that the boys were both well-adjusted and in excellent health. The younger boy was stated to be an excellent student, while the older one was an average one. A letter of a psychologist was admitted as a joint exhibit of the parties. It stated that both boys had positive ties to both parents.

Respondent's objections to the move rested upon (1) petitioner's relationship with a male friend which respondent deemed to be harmful to the boys, and (2) the lessened visitations that the boys could have with him because of the greater expenses that would result from the added traveling costs.

Petitioner admitted that her move was influenced by the move from Champaign to Santa Clara of her male friend. On cross-examination, she admitted that he had on occasion spent the night with her at her home in Champaign while the children were present and had done so in Santa Clara. She testified that he had another Santa Clara residence but kept clothing in her house and had an office in the house in exchange for which he paid a portion of her rent. When questioned in chambers by respondent's counsel, both boys indicated that they were not bothered by their mother and her male friend's sporadic living together. The testimony of the parties was in dispute as to whether they perceived the boys as being uncomfortable with the situation.

In a concise memorandum opinion, the trial court noted that respondent and his present wife had also lived together before their present marriage, although not in the presence of children. The court concluded that (1) petitioner's activities with her male friend did not make her an improper custodian, citing *Burris v. Burris* (1979), 70 Ill. App. 3d 503, 388 N.E.2d 811, and *Jarrett v. Jarrett* (1978), 64 Ill. App. 3d 932, 382 N.E.2d 12, and (2) "[c]ourts will interfere" in a custodial spouse's removal of children from the State only where it *"is so detrimental to the welfare of the children that legal intervention is necessary."* (Emphasis added.)

At all times involved in petitioner's request for permission to remove the children, section 609 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 609) stated in part:

> *"Leave to remove children.* The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in *the best interests of such child or children."* (Emphasis added.)

Prior to the enactment of the foregoing, section 13 of the Divorce Act (Ill. Rev. Stat. 1975, ch. 40, par. 14) provided that the court might give leave to a custodial spouse to remove custodial children from the State "whenever such approval is in *the best interests of such child or children.*" (Emphasis added.)

Respondent strongly argues that the manifest weight of the evidence showed that removal of the boys to California would be detrimental to them. He also asserts that, in any event, at best, the petitioner only established that she desired to remove the boys to California and that this would be an insufficient showing even if there was no indication that the move would be detrimental to them. In support of the latter contention, he cites *Quirin v. Quirin* (1977), 50 Ill. App. 3d 785, 789, 365 N.E.2d 226, 228, where the appellate court reversed a trial court order authorizing a custodial mother to remove the custodial children from Illinois to accompany her to Arkansas where her new husband wished to work.

"We are of the considered opinion that the mere desire of the parent having custody to move to another State, without more, is insufficient to establish that the move would be in the best interests of the children. (See *Reddig v. Reddig.*) Although we would be hesitant to hinder anyone from moving wherever his best opportunities for livelihood might be found, and taking his family with him (see *Spencer v. Spencer,* 132 Ill. App. 2d 740, 743, 270 N.E.2d 72, 74), we are not persuaded that this is such a case."

However, the *Quirin* court found that substantial detriment to the children was conclusively shown. One of the children needed to remain in Illinois to continue treatment for a birth defect and the difficulty of the children's visitation with their father would be substantially increased because of the added time and expenses which would result from the longer distances to be traveled. The court also noted that the mother's new husband was not firmly established in Arkansas and could as likely obtain employment in Illinois as there. We do not interpret *Quirin* as holding that (1) the desires of a custodial parent are not to be given weight in ruling upon the petition of that parent to remove custodial children from the State, or (2) a trial court may not permit such removal, even when no substantial detriment to the custodial children is shown, if no benefit to the children is shown other than that arising from accommodating the custodial spouse. If such rules were intended, we are not in agreement.

We deem it desirable to consider also the rule set forth in dictum in *Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 355 N.E.2d 585. There, a trial court order permitted a mother to have custody of the parties' child and to keep the child with her although she had removed from this State to California after filing for divorce. The evidence showed that the health of

the mother and the child had improved in California and that the only detriment to the father was the increased difficulty of visitation. While affirming, the court stated:

"In two recent cases this court has held that where one of the parents has been awarded custody of the parties' child and there is no showing that the award was against the child's best interests, a court should not oppose removal of the child from Illinois where the parent granted custody has moved or desires to move to another jurisdiction unless there is a specific showing that the move would be against the child's best interests. (*Garland v. Garland,* 19 Ill. App. 3d 951, 312 N.E.2d 811; *Spencer v. Spencer,* 132 Ill. App. 2d 740, 270 N.E.2d 72.) The holdings in these cases reflect that it is generally in a child's best interest to remain with the parent in whose custody the court has determined to place it." 42 Ill. App. 3d 87, 90, 355 N.E.2d 585, 587.

The quotation from *Tandy* was approved in *Gallagher v. Gallagher* (1978), 60 Ill. App. 3d 26, 376 N.E.2d 279, and *Gray v. Gray* (1978), 57 Ill. App. 3d 1, 372 N.E.2d 909. In *Gallagher* a trial court's grant of permission to a mother to remove a custodial child with her to the State of Colorado where she had relatives and could pursue her professional career was affirmed. Evidence showed that the environment for the child would be better in Colorado. In *Gray,* a trial court's denial of permission for a mother to move a custodial child with her to California where she had obtained employment was reversed even though (1) the child had expressed a desire to remain in Chicago so that he could continue to attend the same elementary school, and (2) the visitation of the father who lived in Galesburg would be impaired.

We agree with the position of the *Gray* court that the best interests of a child subject to a custody decree are usually served by leaving the child with the existing custodial parent. Language in *Tandy, Garland,* and *Spencer* all ties the desires of a proper custodial parent to the best interests of the child indicating that permitting the spouse to remove the child may indirectly benefit the child by enabling that spouse to remain as custodian. It also seems that, other things being equal, granting such a request would likely indirectly benefit the child by making the custodian a happier, better adjusted parent than would be the case if the custodian's freedom of movement was more restrained.

■■■ After considering the foregoing precedent, we deem the following to be the proper rule for a trial court to follow in ruling on a petition of a custodial spouse to remove a child from the State. As stated in *Gallagher, Quirin,* and *Garland,* the petitioning spouse has the burden of proof. However, a prima facie showing is made when a proper custodian states a desire to remove, shows a sensible reason for the move, and makes at least

a superficial showing that the move is consistent with the child's best interests. As a child often receives little, if any, demonstrable benefit from moving, direct benefit need not be shown. A different rule would unnecessarily tie many custodial spouses to this State. As proof that the child would not be harmed by the move involves proof of a negative, the petitioning spouse need not negate all possibilities of harm to the child. An objecting party could, of course, introduce evidence of specific damage likely to be incurred by the child. If the noncustodial spouse has rights of visitation, the trial court must give consideration to these rights and, with rare exceptions, should not allow removal if it would prevent reasonable visitation by the noncustodial spouse. The trial court must then weigh all of these items of evidence in arriving at its conclusion.

As the record stands here, the propriety of petitioner to have custody of the boys is not in dispute. Respondent had cross-petitioned for a change of custody but that was denied and he has not appealed that determination. Thus petitioner's desires are a proper element for consideration in determining whether the court erred in permitting the removal of the boys.

Although petitioner's right to custody is not in issue, her relationship to her male friend does bear upon the best interest of the boys and is in issue. The trial court viewed that relationship in light of appellate court decisions in *Burris* and *Jarrett*, which held that cohabitation out of wedlock by a custodial spouse with one of the opposite sex did not constitute unfitness unless the cohabitation was shown to damage the children. The *Jarrett* appellate court had reversed a trial court's decree changing custody because of such cohabitation. In *Jarrett v. Jarrett* (1979), 78 Ill. 2d 337, 400 N.E.2d 421, the appellate court was, in turn, reversed by the supreme court. The majority opinion emphasized that cohabitation out of wedlock was violative of established public policy and found it to have a detrimental effect on the children regardless of whether the detriment could be objectively shown. The supreme court concluded that the trial court's decision was not contrary to the manifest weight of the evidence.

We recognize that the cohabitation shown here and appearing to be likely to occur in the future was not as regular as in *Jarrett*. However, the trial court considered the effect of this conduct by petitioner upon the best interest of the boys in light of the precedent now overruled. In this respect respondent is correct in his assertion that the trial court misinterpreted the law. We conclude that reversal and remandment for rehearing is required.

Upon rehearing the court should consider that the *Jarrett* court made clear that past improper cohabitation, if discontinued, would not, of itself, disqualify a spouse for custody. (78 Ill. 2d 337, 347, 400 N.E.2d 421,

424.) At such hearing, the court must also weigh the possible detriment to the boys from reduced opportunities of visitation that would result from the added expenses and time involved in travel between the respondent's home on the east coast and petitioner's on the west coast. If removal is permitted, the court must be satisfied that a reasonable opportunity for visitation remains.

We do not agree with petitioner's intimation in her brief that restricting her from cohabiting with her male friend would prevent her from having a meaningful relationship and romance with him.

For the reasons stated, we reverse the order appealed and remand to the circuit court of Champaign County for a rehearing on the question of petitioner's request to remove with her to California the two boys in her custody.

Reversed and remanded.

TRAPP and WEBBER, JJ., concur.