*In re* MARRIAGE OF MICHAEL ROPPO, Petitioner-Appellee, and JANE M. ROPPO, n/k/a Jane M. Malanowski, Respondent-Appellant.

First District (1st Division)   No. 1—90—3419

Opinion filed October 28, 1991.—Modified on denial of
rehearing March 3, 1992.

722

Pinderski & Pinderski, Ltd., of Palatine (Jerome W. Pinderski, of counsel), for appellant.

DiTommaso & Berman, P.C., of Oak Brook (Vincent L. DiTommaso, of counsel), for appellee.

JUSTICE MANNING delivered the opinion of the court:

This appeal is taken from the circuit court's denial of the petition of appellant Jane Malanowski to remove her minor son from Illinois pursuant to section 609(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1987, ch. 40, par. 609(a)). Jane and her new husband, Alan, sought to relocate their residence from Berwyn, Illinois, to Vesper, Wisconsin, and requested leave of the court to remove then three-year-old Joseph Roppo. Jane's ex-husband, Michael Roppo, opposed the removal of their son, Joseph. At the conclusion of Jane's case, the trial court granted Michael's motion for a directed finding and denied the petition. We reverse and remand for the following reasons.

On appeal, Jane contends: (1) that the circuit court failed to apply the proper evidentiary standard as enunciated in *In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1041; (2) that the circuit court improperly denied the petition for removal; and (3) that section 609 violates her fundamental right to travel throughout the States.

The petition for removal alleges that Jane "has purchased a home in Vesper, Wisconsin, expects to be employed there on a full-time basis as a medical transcriber and has immediate family members living in that area but none in Chicago." During the hearing on the petition for removal which was held on October 26, 1990, Jane testified that she and Michael were married on October 4, 1980, in Pittsville, Wisconsin. They soon relocated to Berwyn, Illinois, and thereafter adopted Joseph. The marriage was dissolved on November 8, 1989.

Incorporated into the judgment of dissolution of marriage was a written marital settlement agreement. Pursuant to the agreement, custody of Joseph was awarded to Jane and Michael was awarded reasonable visitation. Michael thereafter exercised overnight visitation rights with Joseph commencing Wednesday at 6 p.m. until Thursday at 9 a.m. and weekend visitation rights commencing Saturday at 10 a.m. until Monday at 9 a.m. However, beginning August 9, 1990, following the trial court's disposition of Jane's petition to restrict visitation, Michael's visitation rights were changed to alternate weekends.

Jane stated that she currently resided in Berwyn, Illinois, with her husband and Joseph and that she had been employed as a medical transcriber at Loyola Hospital until the day before the hearing at which time she quit the position. Jane further testified, *inter alia*, that she had lived in the Pittsville, Wisconsin, area which was approximately 10 miles from Vesper; that she had attended high school in the area; that she had married Michael there; that Michael also had lived in the area and graduated from the high school there; that her parents and siblings and their families lived in the area and Joseph visited with them on a regular basis; and that Michael's mother lived in Stevens Point, which was approximately 20 miles from Vesper. Jane also stated that she discussed moving to the Vesper-Pittsville area with Joseph and Michael on a few occasions and that during the discussions, Michael never expressed any opposition to having Joseph live or grow up in the area. When asked about her reasons for wanting to move to Vesper, Jane replied that she purchased a three-bedroom house on an acre of land and that "the environment is just totally different from here. There are fewer people ***, less people in class. The school systems are better. Less crime. It's just a totally different atmosphere than City life."

Although Jane did not have any employment offers in Vesper, she did not anticipate any difficulty in finding employment because she worked in the area for five years as a medical transcriber, was familiar with the hospitals there, and knew of three openings at the time of the hearing. Neither did Jane envision any visitation problems for Michael if the court granted her petition and she was willing to share the burden and expense of visitation that might be incurred in travel for Joseph. Jane stated that Vesper, Wisconsin, was located approximately 4½ hours from Berwyn. Finally, Jane stated that she believed it would be in her son's best interest to be raised and to live in Vesper, Wisconsin.

On cross-examination by Michael's attorney, Jane testified that Alan was employed on a full-time basis as the manager of a ware-

house. Although she stated during her deposition that Alan had no job offers for permanent employment in Wisconsin, the situation had changed because her brother, who was a house builder, recently offered Alan seasonal work. During the deposition Jane also stated that she believed Joseph should see his father once a month because more visits were disruptive and it was best for Joseph to settle into his new family and new home; however, during the hearing Jane testified that she thought Joseph should see his father "as often as the guidelines permit" and more than one weekend per month if the court so decided.

When questioned by the minor's court-appointed attorney, Jane acknowledged that Michael took Joseph to the park and the movies during their visits and that Joseph spent time with his brother and the children of Michael's new wife. The record also reflects that Michael has a son, Nicholas Roppo, and several stepchildren from his second marriage to Sherri Calahan. Jane also believed that the move to Vesper would enhance Joseph's and her own general quality of life.

The circuit court found that Jane and Michael were both very good parents with good situations and settings for Joseph. It recognized *Eckert* as the controlling precedent in removal actions and based thereon determined: (1) that Jane did not have the motive of disrupting the relationship between the father and the child; (2) that Jane did not have the motive to defeat or frustrate visitation; (3) that Michael had no motive to harm Jane or act unreasonably in opposition to the removal and only wanted to continue the close relationship with the child; and (4) that Michael had adhered to the current visitation schedule of alternate weekends and one day during the week and that he had previously adhered to the visitation schedule of every weekend and one day during the week.

In looking at the likelihood of enhancing the general quality of life, the court found that: (1) Jane wanted to return to her roots; (2) the area could be a very beautiful, wonderful area; (3) there is no question but that the small town is different from Berwyn or the Chicagoland area; (4) the child would be in a rural school rather than the Catholic school in Berwyn, but there was no testimony about the quality of either school; (5) the nice house in Vesper is different from a three flat in Berwyn on a lot; (6) there are relatives for the child to play with in Vesper and a half brother and stepchildren to play with in Illinois; (7) Jane had no job in Wisconsin; (8) Jane's husband Alan has a job in Illinois and the family is economically dependent on that job, and further, this is not a situation where Alan is being transferred to Wisconsin; (9) Jane had a job which she recently quit; (10)

Michael and Joseph enjoyed an extremely good relationship; and (11) there are alternatives in Illinois such as rural Chicagoland. The court concluded that Jane had not met her burden of proving that the move would enhance the general quality of life for the child and denied the petition for removal.

■■ Section 609 of the Act provides, in relevant part:

"(a) The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal. When such removal is permitted, the court may require the party removing the child or children from Illinois to give reasonable security guaranteeing the return of such children.

*   *   *

The State of Illinois retains jurisdiction when the minor child is absent from the State pursuant to this subsection." Ill. Rev. Stat. 1987, ch. 40, par. 609.

Court approval is required where minor children subject to the jurisdiction of the court are to be removed permanently from the State. Section 609 authorizes the custodial parent to obtain court permission to remove the minor child from Illinois where the permanent removal is in the best interests of the children.

■ The current statutory provision clarifies that the burden of proof in removal actions is on the party seeking the removal. However, decisions construing the prior statutory provisions continue to be applicable to the construction of the current section. To that extent, circumstances which the courts have deemed relevant in deciding requests for removal based upon the best interest standard include improved employment opportunities (*Tandy v. Tandy* (1976), 42 Ill. App. 3d 87, 355 N.E.2d 585); improved health and welfare of the child (*Hickey v. Hickey* (1975), 31 Ill. App. 3d 257, 333 N.E.2d 271); and the relative quality of educational facilities available to the child (*Gray v. Gray* (1978), 57 Ill. App. 3d 1, 372 N.E.2d 909). This court has also found that the custodial parent's mere desire to move, without more, is insufficient to meet the burden of proof that removal is in the best interests of the child. See *Quirin v. Quirin* (1977), 50 Ill. App. 3d 785, 365 N.E.2d 226.

A three-part test for determining whether removal should be allowed was established in the case of *In re Custody of Arquilla* (1980), 85 Ill. App. 3d 1090, 407 N.E.2d 948. The court enunciated the test

as: (1) whether the general quality of life for both the parent and the child will be improved as a consequence of the move; (2) whether the motives of the custodial parent in seeking removal are proper; and (3) whether the noncustodial parent will continue to be able to exercise reasonable visitation. However, there arose a difference of opinion on this issue among the districts of the Illinois Appellate Court. In *In re Marriage of Burgham* (1980), 86 Ill. App. 3d 341, 408 N.E.2d 37, the court developed a more liberal test and stated that a *prima facie* showing is made when a proper custodian: (1) states a desire to remove the child; (2) shows a sensible reason for the move; and (3) makes at least a superficial showing that the move is consistent with the child's best interests. Some of the other districts of the Illinois Appellate Court agreed with *Burgham*. See *In re Marriage of Brady* (2d Dist. 1983), 115 Ill. App. 3d 521, 450 N.E.2d 985; *In re Marriage of Lichtenstein* (5th Dist. 1986), 139 Ill. App. 3d 881, 487 N.E.2d 1293.

Michael urges this court to follow the *Burgham* test. However, the Illinois Supreme Court in *Eckert* (119 Ill. 2d 316, 518 N.E.2d 1041) rejected the liberal test set forth in *Burgham* as being contrary to the 1982 amendment of section 609 which placed the burden of proof on the party seeking removal. The *Eckert* court stressed that much of the decisional law which predates the 1982 amendments, as well as other decisions, provides factors to aid the trial court's determinations under the "best interests" test. The court enunciated that "[a] determination of the best interests of the child cannot be reduced to a simple bright-line test, but rather must be made on a case-by-case basis, depending, to a great extent, upon the circumstances of each case. [Citations.] There are, however, several factors which may aid a trial court in determining the best interests of the child." *Eckert*, 119 Ill. 2d at 326.

■ In *Eckert*, our supreme court stated that in deciding upon a petition for removal, the trial court should consider the following factors:

(1) whether the proposed move will enhance the general quality of life for both the custodial parent and the child or children;

(2) whether the proposed move is a ruse by the custodial parent to defeat or frustrate visitation;

(3) the motives of the noncustodial parent in resisting removal; and

(4) the visitation rights of the noncustodial parent; and

(5) whether a realistic and reasonable visitation schedule can be reached if the move is allowed.

(See *Eckert*, 119 Ill. 2d at 326-27; accord *In re Marriage of Gratz* (1989), 193 Ill. App. 3d 142, 548 N.E.2d 1325; *In re Marriage of Kutinac* (1989), 182 Ill. App. 3d 377, 538 N.E.2d 862.) Additionally, in *Arquilla* (85 Ill. App. 3d at 1093), this court found that so long as the trial court is satisfied with the motives of the custodial parent in seeking the move and reasonable visitation is available to the remaining parent, removal should be granted. *Eckert* defines a reasonable visitation schedule as "one that will preserve and foster the child's relationship with the noncustodial parent." *Eckert*, 119 Ill. 2d at 327.

It is well settled that the reviewing court should not disturb the trial court's determination of what is in the best interests of the child in a removal action unless such determination has resulted in manifest injustice or is against the weight of the evidence. (*Eckert*, 119 Ill. 2d at 328, citing *Quirin*, 50 Ill. App. 3d 785, and *Hickey v. Hickey*, 31 Ill. App. 3d 257, 333 N.E.2d 271.) In the present case, after applying the foregoing principles of law, being especially guided by the principles of fairness and justice, and the competing interests involved, and after having reviewed the record below, we do not find that these factors, when considered individually and as a whole, support the conclusion that removal of Joseph to Vesper was not in his best interest. We thus believe the trial court's finding that Jane failed to sustain her burden of proof that removal of the child from the State is in the child's best interest is against the manifest weight of the evidence.

First, there was an express finding by the trial court that neither of the parents' motives in seeking or resisting removal was improper, and we have found nothing in the record to the contrary. Therefore, we will consider only the first, fourth and fifth factors set forth in *Eckert*.

In examining what will likely enhance the general quality of life for the child, it is permissible for the trial court to analyze the benefits to be derived by the custodial parent who desires to move because the existence of such direct benefits will indirectly enhance the quality of life enjoyed by the child involved. *In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 529 N.E.2d 780.

In *Zamarripa-Gesundheit*, the appellate court found that the petitioner's petition for removal was improperly denied by the trial court. The facts there revealed that the petitioner's new husband wanted to move to Seattle because he had visited the city on a few occasions and liked it. The income and employment opportunities for petitioner and her husband were comparable to those in Illinois. Similarly, the

child's general quality of life would not be directly enhanced because the move would place her in the same educational and financial situations. However, in reversing the trial court's decision, this court found that the move would enhance the petitioner's quality of life and that the respondent would still be able to maintain a close relationship with his daughter by having extended visitation during the summer and school breaks.

In *In re Marriage of Gratz* (193 Ill. App. 3d 142, 548 N.E.2d 1325), we reversed the trial court's denial of petitioner's petition to remove her child to Arizona, finding that the petitioner presented abundant evidence that the move would enhance the general quality of life for her and her son. In that case, although the respondent would no longer enjoy visits with his son every weekend because of the distance involved, we determined that under the new visitation schedule with increased days during the summer, the number of days would be substantially the same and that no evidence was presented that lack of regular contact invalidates a fostering relationship. To the contrary, the court there reasoned that given the length of the summer visits, the child would spend even more time with siblings and friends.

We reached the same result in *In re Marriage of Taylor* (1990), 202 Ill. App. 3d 740, 559 N.E.2d 1150, and *In re Marriage of Carlson* (1991), 216 Ill. App. 3d 1077, 576 N.E.2d 578. In *Taylor*, we concluded that where a move significantly enhances the general quality of life for the wife, the custodial parent, it therefore indirectly beneficially affects the child's quality of life. (*Taylor*, 202 Ill. App. 3d at 745.) In *Carlson*, we reasoned that a determination of the best interest of the child depends largely on whether the move is likely to enhance the general quality of life of the children and their mother. Similarly, in *In re Marriage of Shelton* (1991), 217 Ill. App. 3d 26, 576 N.E.2d 862, we affirmed the trial court's grant of petitioner's petition for removal, finding that the trial court's decision that the move to Florida was in the best interests of the children was not against the manifest weight of the evidence. The evidence presented there established that the children's lifestyle in both Florida and Illinois would be comparable. We held that since petitioner's husband, who was unemployed in Illinois, subsequently became employed in Florida, the family's financial situation was enhanced and thus their general quality of life would be enhanced.

Here, Jane testified that the move to Vesper would not only benefit Joseph, who would be living closer to her family and in a more spacious home and safer environment, but it would also bene-

fit Jane since she would be happier and more fulfilled living in Vesper near her family and familiar surroundings. Although there was little, if any, evidence about the current school and educational circumstances for Joseph in Vesper, Jane stated that she and Michael had grown up in the area and attended school there. She also testified that the schools were better and the classes were smaller. Michael attempts to trivialize Jane's reasons for moving as a mere desire to move, and during cross-examination, Michael's attorney questioned her motives for quitting her job in Illinois and the fact that Alan had gainful employment in Illinois but speculative employment in Vesper. However, Jane testified that her job prospects were very promising in Vesper, that three positions were available at the time of the hearing and that her brother was willing and able to hire Alan for construction work. Moreover, Jane stated that she and Alan had already purchased a home in Vesper while she lived in a three-family apartment building in Illinois. She stated that her parents and siblings and their families lived close by, that Michael's mother lived in the area and that Joseph had maintained regular visitation with Jane's relatives in the past year.

Based upon the foregoing cases, we find that where Jane's general quality of life is enhanced, that of Joseph is, in the least, indirectly beneficially enhanced. We believe that the evidence below, contrary to the finding of the circuit court, establishes that Jane sustained her burden of proof that the move to Vesper would enhance her general quality of life. Thus, we conclude that the circuit court's decision denying Jane's petition for removal in reliance on the general enhancement factor was against the manifest weight of the evidence and that Michael was not entitled to a directed finding at the conclusion of Jane's case.

We are mindful of the caveat in *Eckert* that a bright-line test is improper; therefore, we must be careful not to overemphasize any one factor. To that extent, we now look at the fourth and fifth factors, as an analysis which may be helpful to the trial court on remand.

The record clearly establishes that Michael exercised his visitation rights with Joseph, that he saw Joseph on a regular basis and that he seemingly fostered a relationship between Joseph and Michael's new family which included his wife, Sherri, his son Nicholas and stepchildren. The circuit court stated that Joseph stayed with Michael on alternate weekends and one evening during the week and that he had previously stayed with him every weekend. However, the court did not look at a reasonable and realistic

visitation schedule in the event the removal petition was granted. According to our calculations, at the time of the instant petition, Michael spent approximately 78 days during the year with Joseph. Although the record does not contain a proposed schedule, Jane testified that given the travel involved, one weekend every month seemed reasonable to her. There was no mention of holidays or summer vacation. Additionally, Michael presented no testimony whatsoever and as a result the record does not reflect his work schedule. Jane testified that she would share in the expenses incurred in the travel from Vesper to Illinois and would travel with Joseph, if necessary.

■ Our supreme court has determined that "[w]hen removal to a distant jurisdiction will substantially impair the noncustodial parent's involvement with the child, the trial court should examine the potential harm to the child which may result from the move. [Citations.]" (*Eckert*, 119 Ill. 2d at 328.) However, in *balancing all of the competing interests involved*, the *Eckert* court further reasoned that if the best interests of the child would not be affected by a move to another State, the custodial parent should be free to move. Here, as mentioned above, we agree with the trial court's finding that Jane's reason for the move is neither frivolous, unpersuasive nor inadequate.

■ Based on the precedent in removal actions as mentioned previously, it is not uncommon to supplement the weekend or alternate visitation schedule of the noncustodial parent with monthly visits and longer visitation of weeks or even months during school breaks and the summer vacation. Again, according to our calculations, assuming *arguendo* that Joseph spent one weekend of each month during the school year and two months during the summer with Michael, the amount of visitation days would remain the same. Neither does the move to Vesper substantially impair Michael's visitation rights with respect to distance since travel time by automobile is approximately four hours and the move is not to some distant jurisdiction. We find that as the circuit court did not consider whether a realistic and reasonable visitation schedule could be fashioned to preserve Michael's rights, on remand, it is directed to do so when reconsidering the removal petition and award visitation rights to Michael in accordance therewith, if appropriate.

Accordingly, the order of the trial court granting Michael's motion for a directed finding and denying Jane's petition for removal is reversed and the cause is remanded with directions to proceed as though the motion had been denied by the trial court. We reach this

decision because we are guided by the overall and underlying general purpose of the Act and, as argued by Michael, we believe that it is important that the child maintain significant contact with both parents following the divorce. While it is important that Michael continue to spend time with Joseph and that Joseph continue the relationship with his brother and Michael's stepchildren, all of whom live in Illinois, it is equally important that Joseph adjust to his new family life with Jane and his stepfather and spend time with his maternal relatives, most of whom apparently live in Wisconsin.

In the final analysis, the trial court's examination of a removal petition should be guided by the policies of the Act, one of which is to " 'secure the maximum involvement and cooperation of both parents regarding the physical, mental, moral and emotional well-being of the children during and after the litigation.' " (*In re Marriage of Eckert*, 119 Ill. 2d at 328, quoting Ill. Rev. Stat. 1987, ch. 40, par. 102(7).) That policy is best served when, in addition to a favorable determination of all of the *Eckert* factors, the court considers the aspects of cooperation of both parents in achieving as reasonable an expectation of normalcy and family life for the child involved as can be achieved following a divorce, which includes adjustments to stepparents in the event of the remarriage of one or both parents.

Finally, because of our disposition of this case, we need not address Jane's assertions that section 609 may violate her fundamental right to travel throughout the States.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

CAMPBELL and O'CONNOR, JJ., concur.