*In re* MARRIAGE OF DIANA COSS, f/k/a Diana Christenson, Petitioner-Appellant, and BERNARD CHRISTENSON, Respondent-Appellee.

First District (5th Division)   No. 1—92—2623

Opinion filed May 21, 1993.

John M. Morrone and James J. Morrone, both of John M. Morrone, P.C., of Palos Heights, for appellant.

Rosenberg & Rosenberg, P.C., of Chicago (Russell S. Rosenberg and Howard P. Rosenberg, of counsel), for appellee.

JUSTICE McNULTY delivered the opinion of the court:

In this action, petitioner Diana Coss appeals the trial court's denial of her petition to remove the minor child Amanda Christenson from Illinois to Greenville, South Carolina. For the reasons which follow, we affirm the decision of the trial court.

On November 9, 1990, a judgment for dissolution of marriage was entered which dissolved the marriage of petitioner Diana Coss, f/k/a Diana Christenson (Diana), and Bernard Christenson (Bernard). According to the terms of the judgment for dissolution, Diana and Bernard were granted joint legal custody of the parties' sole minor child, Amanda Christenson (Amanda). Diana was to have physical custody of Amanda subject to specific visitation rights of Bernard. On October 31, 1991, Diana filed a petition to remove Amanda from Cook County, Illinois, to Greenville, South Carolina, where Diana had grown up and where her parents still reside, and where she also intended to establish a new residence. The present appeal follows the denial of that petition.

On appeal, Diana maintains that the denial of her petition for removal has resulted in manifest injustice or is against the weight of the evidence and as such this decision should be reversed. *In re Marriage of Roppo* (1991), 225 Ill. App. 3d 721, 587 N.E.2d 1031.

Upon the filing of a petition for removal, the Illinois Supreme Court has stated that there are five factors which should be considered by the court in a removal case. (*In re Marriage of Eckert* (1988), 119 Ill. 2d 316, 518 N.E.2d 1046.) The *Eckert* factors, which were considered by the trial court in denying the petition, are as follows:

"(a) whether the proposed move will enhance the general quality of life for both the custodial parent and the child or children;

(b) whether the proposed move is a ruse by the custodial parent to defeat or frustrate visitation;

(c) the motives of the noncustodial parent in resisting removal;

(d) the visitation rights of the noncustodial parent; and

(e) whether a realistic and reasonable visitation schedule can be reached if a move is made."

■ In her appeal, Diana argues that the trial court's decision that the proposed move would not enhance the general quality of life for both the custodial parent and the child is against the weight of the evidence. In considering whether a move will enhance the quality of life of a minor child, a court may consider the direct benefit to the child as well as the direct benefit to the custodial parent. (*In re Marriage of Zamarripa-Gesundheit* (1988), 175 Ill. App. 3d 184, 529 N.E.2d 780.) In this regard, Diana maintains and the evidence supports the fact that if she moved to Greenville, she would be able to live rent free in one of her father's rental homes and that she would be able to attend Bob Jones University free of cost, because her father is a professor there. Diana contends that she could thereby provide Amanda with a better financial future than if she remained in Orland Park, Illinois. However, the evidence adduced at trial also indicated that Diana's father could lease the rental home and send Diana the money so that she could live rent free in her Orland Park apartment. Also, Diana admitted that she had not explored the possibility of completing her education in the Chicago area. She argued that she was satisfied with the Orland Park neighborhood, the schools and the church she and Amanda attend. Additionally, Diana argued in the trial court that she would be able to continue her exact same employment (office management and recruiting duties at Employment Consultants, Inc.) if she relocated in Greenville. However, the trial court found this testimony incredible. All of the employees of Employment Consultants are in the Chicago metropolitan area, and Diana had worked for Employment Consultants for only 2½ years. Furthermore, she had no employment contract. Diana also testified that although she would be able to work out of her home in Greenville, she could not work out of her home in Orland Park. In considering the aforementioned factors, we find that although the move to Greenville would prove comfortable to Diana and Amanda due to Diana's close ties with her family, as the

trial judge concluded, the general quality of life would not be substantially different than that enjoyed in Orland Park.

The trial court also considered the second *Eckert* factor—whether the proposed move was a ruse by the custodial parent to defeat or frustrate visitation. Although Diana has never discouraged or attempted to frustrate visitation, the move to Greenville would greatly reduce the time that Bernard would spend with his daughter. At present, Bernard visits with his daughter approximately 128 days and 76 nights a year (this includes weekends, some major holidays, and three weeks of continuous vacation). The proposed visitation would be 63 days a year, including four weeks in June, three weeks in August, 10 days in December and alternating Christmas holidays. While not an unreasonable visitation schedule, such plan would provide Bernard with substantially less time with Amanda. Additionally, the removal would weaken the contacts between Amanda and Bernard's family (his parents, sisters and their children). Thus, although Diana's motives in seeking removal were entirely proper, and not a ruse to avoid visitation, the net result of such removal would substantially reduce the contacts of Bernard and his family with Amanda.

In reaching his decision, the trial judge also considered Bernard's motives in opposing the removal. In his decision and order he stated that Amanda was the most important person in Bernard's life and that he found he would lose the relationship with her if the petition were allowed. Considering that the parties agreed to joint custody of Amanda, the judge was justified in giving careful consideration to the rights of Bernard, the nonresidential parent.

In reaching his decision, the trial judge carefully considered the *Eckert* factors as well as the policy of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1989, ch. 40, par. 609.) This policy is to insure the maximum involvement of both parents in matters involving the physical, mental, moral and emotional well being of the child. (*Eckert*, 119 Ill. 2d 316, 518 N.E.2d 1046.) The judge also considered the testimony of Amanda, herself, who stated that she wished she could see her father every day. In reviewing the evidence adduced at trial, we cannot say that the court's decision is against the weight of the evidence or that manifest injustice will result. Accordingly, the judgment of the trial court is affirmed.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.