915 N.E.2d 434 (2009)
333 Ill.Dec. 628
In re PARENTAGE OF R.B.P. III, a Minor (R.B.P., Jr., Petitioner-Appellee, v. Traci L. Lowery, Respondent-Appellant).
No. 3-08-0881.
Appellate Court of Illinois, Third District.
August 18, 2009.
*435 Mary Beth Szudarek (argued), Will County Legal Assistance Program, Joliet, for Traci L. Lowery.
Chuck Bretz, Joseph A. Namikas (argued), Chuck Bretz & Associates, P.C., Joliet, for Robert B. Papes.
Justice SCHMIDT delivered the opinion of the court:
This is an interlocutory appeal from an order of the circuit court of Will County that granted petitioner, R.B.P., Jr.'s motion to return the minor child to the state of Illinois. Respondent, Traci Lowery, appeals, claiming the trial court erred in granting petitioner's motion as she was not required to seek judicial permission prior to leaving the state with the minor child and the court improperly applied section 609 of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/609 (West 2008)) instead of section 13.5 of the Illinois Parentage Act of 1984 (750 ILCS 45/13.5 (West 2008)).

BACKGROUND
The relationship between R.B.P., Jr., and Traci Lowery produced a minor child born on June 20, 2006. While the two never married, there is no dispute that petitioner is the father of the minor child. Petitioner is listed on the minor child's birth certificate as the father. He lived with Traci and the minor in Coal City from June of 2006 until July of 2007.
In July of 2007, Traci and the minor moved to her mother's house in Plainfield. On July 12, 2007, Traci obtained an emergency order of protection in Will County after petitioner allegedly made a series of threatening phone calls to her. These alleged calls included a threat to burn the family's house down with Traci and the minor child in it. On December 3, 2007, an incident occurred in which petitioner slammed Traci's head to the floor. This incident resulted in petitioner being charged with, and pleading guilty to, domestic battery in Will County. The incident also resulted in investigation by the Department of Children and Family Services (DCFS) with which petitioner refused to cooperate.
On March 8, 2008, Traci and the minor child fled her mother's house and moved to her grandmother's house in Mesa, Arizona. Traci and the minor child have lived in Arizona ever since. Traci is attending school in Arizona, not working, and claims to be destitute. She claims to receive financial support from her family and food stamps from the state of Arizona.
At the time of Traci's move, petitioner had not instituted any legal proceedings regarding the minor child. On March 25, 2008, 17 days after Traci left for Arizona, petitioner filed a petition to establish paternity *436 in the circuit court of Will County. Traci was served by substitute service on April 7, 2008, in Mesa, Arizona.
On June 10, 2008, Traci answered the petition to establish paternity, admitting the allegations in the petition that alleged petitioner is the father of the minor, but objecting to the prayer for relief that asked the court to award custody to him. On July 31, 2008, R.B.P., Jr., filed a motion for immediate return of the minor child to the state of Illinois. Petitioner's motion states that pursuant to section 609 of the Illinois Marriage and Dissolution of Marriage Act (the Marriage Act) (750 ILCS 5/609 (West 2008)) and section 14(a)(1) of the Illinois Parentage Act of 1984 (the Parentage Act) (750 ILCS 45/14(a)(1) (West 2008)), Traci's actions "in secreting the minor child from the petitioner" were "clearly contrary to the interest of the minor child." On September 26, 2008, the trial court granted petitioner's motion for immediate return of the minor child. The court ordered that Traci was to appear on October 10, 2008, with the minor child.
When granting the motion, the trial court found that "609 applies" with no discussion of how or why it applies. Neither the oral argument transcripts from the hearing on the motion, the transcripts from the motion to reconsider, nor the written order contains any additional analysis as to the basis for the trial court's ruling other than "609 applies." Traci's timely motion to reconsider was denied and this appeal followed.

STANDARD OF REVIEW
Traci argues that the trial court applied an incorrect and inapplicable statute (section 609 of the Marriage Act (750 ILCS 5/609 (West 2008))) to this matter. She argues that section 609 does not apply to her and that the only authority under which the trial court could have ordered her return is found in section 13.5 of the Parentage Act (750 ILCS 45/13.5 (West 2008)). As such, Traci claims, the trial court was required to hold a hearing pursuant to section 13.5 of the Parentage Act before issuing an injunction that mandated the child's return. The issue of which statute applies in this matter is a question of law we review de novo. In re D.D., 196 Ill.2d 405, 256 Ill.Dec. 870, 752 N.E.2d 1112 (2001).

ANALYSIS
In his motion to return the minor child, petitioner cites, for authority, section 609 of the Marriage Act, which states:
"Leave to Remove Children. (a) The court may grant leave, before or after judgment, to any party having custody of any minor child or children to remove such child or children from Illinois whenever such approval is in the best interests of such child or children. The burden of proving that such removal is in the best interests of such child or children is on the party seeking the removal." 750 ILCS 5/609 (West 2008).
Petitioner also cites, for authority, section 14(a)(1) of the Parentage Act, which states:
"(a)(1) * * * In determining custody, joint custody, removal, or visitation, the court shall apply the relevant standards of the Illinois Marriage and Dissolution of Marriage Act, including Section 609." 750 ILCS 45/14 (a)(1) (West 2008).
Traci argues that neither applies to her. She claims that the trial court's order, mandating she return to Illinois with the minor child, is in effect an injunction that can only be entered after a hearing pursuant to section 13.5 of the Parentage Act. 750 ILCS 45/13.5 (West 2008). Section 13.5 states as follows:

*437 "(a) In any action brought under this Act for the initial determination of custody or visitation of a child * * *, the court, upon application of any party, may enjoin a party having physical possession or custody of a child from temporarily or permanently removing the child from Illinois pending the adjudication of the issues of custody and visitation. When deciding whether to enjoin removal of a child, the Court shall consider the following factors including, but not limited to:
(1) the extent of previous involvement with the child by the party seeking to enjoin removal;
(2) the likelihood that parentage will be established; and
(3) the impact on the financial, physical, and emotional health of the party being enjoined from removing the child.
* * *
(c) Notwithstanding the provisions of subsection (a), the court may decline to enjoin a domestic violence victim having physical possession or custody of a child from temporarily or permanently removing the child from Illinois pending the adjudication of the issues of custody and visitation." 750 ILCS 45/13.5 (West 2008).
Petitioner disagrees with Traci, arguing that, although it is found in the Marriage Act and the parties never married, section 609 was properly applied by the court as it is incorporated into the Parentage Act by section 14 of the Parentage Act. To support this contention, petitioner cites Fisher v. Waldrop, 221 Ill.2d 102, 302 Ill.Dec. 542, 849 N.E.2d 334 (2006). In Fisher, the mother and father of a minor never married. Fisher, 221 Ill.2d at 106, 302 Ill.Dec. 542, 849 N.E.2d 334. They ended their relationship when the child was approximately 2½% years old; the father initiated proceedings under the Parentage Act nine months thereafter. The mother was appointed residential custodian of the minor in a judgment specifying custody and setting forth "an extensive and detailed visitation schedule" for the father. Fisher, 221 Ill.2d at 106, 302 Ill.Dec. 542, 849 N.E.2d 334.
Approximately one year later, the father filed a petition seeking an injunction pursuant to section 13.5 of the Parentage Act to prevent the mother from moving out of state with the minor. Fisher, 221 Ill.2d at 106, 302 Ill.Dec. 542, 849 N.E.2d 334. Thereafter, the mother filed a petition under section 609 of the Marriage Act seeking permission to take the minor out of state, but moved to dismiss her section 609 petition one week later. Fisher, 221 Ill.2d at 107, 302 Ill.Dec. 542, 849 N.E.2d 334. The mother argued that since she and the father never married, section 609 of the Marriage Act was inapplicable. Therefore, she contended it was the father's burden under section 13.5 of the Parentage Act to seek an injunction preventing removal if he so chose, not her duty to seek leave of court prior to removal under section 609 of the Marriage Act. Fisher, 221 Ill.2d at 107, 302 Ill.Dec. 542, 849 N.E.2d 334.
In addressing these arguments our supreme court stated:
"The question we must answer is what procedures must be followed in a case brought under the Parentage Act when a custodial parent seeks to remove a child from Illinois. * * *
This dispute turns on statutory construction. The principles which guide our analysis are familiar. Our standard of review is de novo, and our primary objective is to give effect to the legislature's intent. * * *

*438 * * *
Before 2003, the Parentage Act did not contain any provisions relating specifically to the issue of removal of children from Illinois. Although section 609 of the Marriage Act speaks directly to the situation, our appellate court does not import provisions of the Marriage Act into Parentage Act cases absent express statutory authority. [Citation.] Before 2003 no provision of the Parentage Act referenced or incorporated section 609 of the Marriage Act, and accordingly, the appellate court never applied the requirements of section 609 to the issue of removal in Parentage Act proceedings. [Citations.]
However, in 2003 the legislature amended the Parentage Act to address removal. Pub. Act 93-139, § 5, eff. July 10, 2003. See 750 ILCS 45/13.5, 14, 16 (West 2004). Section 14 deals with initial judgments. * * *
As previously noted, [the mother] contends that section 13.5 is the operative section, and contends that unless a noncustodial parent files for an injunction pursuant to section 13.5, the Parentage Act does not restrict a custodial parent's ability to remove a child from the state. We disagree.
Sections 14 and 16 of the Parentage Act clearly refer to removal as an issue to be addressed in the initial judgment and in judgment modifications. See 750 ILCS 45/14, 16 (West 2004). Moreover, both sections specify that the court's determination on removal is to be made in accordance with section 609 of the Marriage Act. Section 609 specifies that the court `may grant leave' to a custodial parent to remove a child from Illinois  thus the parent must first request leave  and the burden is on the custodial parent to prove that removal would be in the child's best interests. 750 ILCS 5/609(a) (West 2004). [Citation.]
The language of section 13.5 does not support [the mother's] position. Section 13.5 permits the court to enjoin the custodial parent `from temporarily or permanently removing the child from Illinois pending the adjudication of the issues of custody and visitation.' (Emphasis added.) 750 ILCS 45/13.5(a) (West 2004). It is clear that the injunctions permitted by section 13.5 are intended to be temporary in nature, keeping the child in Illinois only until the court can conduct a hearing on the merits of a removal petition.
Moreover, [the mother's] position would render the changes to sections 14 and 16 mere surplusage, which would violate one of our cardinal rules of statutory construction. [Citations.] If, as [the mother] argues, a custodial parent can remove a child from Illinois unless the noncustodial parent files for an injunction pursuant to section 13.5, the changes the legislature made to sections 14 and 16 would be meaningless and utterly without effect. No custodial parent would ever seek an order allowing removal if he or she automatically had the power to remove the child simply by virtue of being the custodial parent, as [the mother] argues.
Additionally, [the father's] suggested construction of the amendments to the Parentage Act has the virtue of greater similarity to the Marriage Act. Under the Marriage Act, as previously noted, a custodial parent must petition for leave of court before removing a child from Illinois, and the burden is on the custodial parent to show removal is in the child's best interests. 750 ILCS 5/609 (West 2004). However, the Marriage Act also provides that in all proceedings thereunder, any party may request a preliminary injunction to, inter alia, `enjoin[ ] *439 a party from removing a child from the jurisdiction of the court.' 750 ILCS 5/501(a)(2)(ii) (West 2004). The legislative history indicates that the legislature's intent was to grant a parent in a Parentage Act action rights similar, if not identical, to those of a parent in a Marriage Act action. See 93d Ill. Gen. Assem., House Proceedings, May 27, 2003, at 70 (statements of Representative Black) ('At least it gives the noncustodial parent a, I won't say the same right, but a similar standing to go to court and question the removal of the child or children, as the case may be, to another state if there's no apparent reason for the move').
For all these reasons, we conclude that [the father's] reading of the Parentage Act is correct. That is, when a custodial parent intends to remove a child from Illinois he or she must request leave of court, and the burden is on the custodial parent to show that removal would be in the child's best interests. It is not incumbent on a noncustodial parent to request an injunction pursuant to section 13.5 in order to force the custodial parent to request leave of court before removing children from the state regardless of whether an injunction has been sought, and a custodial parent who removes children from the state without having first at least requested leave could potentially be subjected to contempt proceedings. If the noncustodial parent does seek an injunction, the burden is on the noncustodial parent to establish that he has no adequate remedy at law and will suffer irreparable harm without injunctive relief (see Sadat v. American Motors Corp., 104 Ill.2d 105, 115[, 83 Ill.Dec. 577, 470 N.E.2d 997] (1984)), paying specific but not exclusive attention to the factors listed in section 13.5 of the Parentage Act (750 ILCS 45/13.5(a) (West 2004))." Fisher, 221 Ill.2d at 111-17, 302 Ill.Dec. 542, 849 N.E.2d 334.
We conclude that the holding in Fisher was only meant to apply to situations in which a custody order, or pending parentage/custody action, already existed prior to the unmarried custodial parent removing the minor from the state. A careful analysis of Fisher and the statutory scheme put in place by our legislature reveals that section 13.5 of the Parentage Act, as Traci argues, is the only mechanism available to the court to order the return of a minor child in situations such as this where the parents were never married and no proceedings whatsoever existed prior to the custodial parent leaving the state with the child.
In Fisher, unlike the case at hand, the parties had been quarreling over custody and visitation for more than two years when the custodial parent requested permission to leave the state of Illinois. Fisher, 221 Ill.2d at 106, 302 Ill.Dec. 542, 849 N.E.2d 334. In fact, there was in place in Fisher a "detailed visitation schedule" for more than a year when the custodial parent informed the noncustodial parent of her intention for removal. Fisher, 221 Ill.2d at 106, 302 Ill.Dec. 542, 849 N.E.2d 334. As the parties in Fisher were never married, the order mandating the detailed visitation schedule was entered in a proceeding initiated under the Parentage Act by the noncustodial parent. Fisher, 221 Ill.2d at 106, 302 Ill.Dec. 542, 849 N.E.2d 334.
While disagreeing with the mother's contention that she need not seek permission under section 609 of the Marriage Act, our supreme court held that it, in fact, was the obligation of the custodial parent in Fisher to seek leave to remove the child under section 609 of the Marriage Act before moving with the child to another *440 state. Fisher, 221 Ill.2d at 116-17, 302 Ill.Dec. 542, 849 N.E.2d 334. The court based its ruling on the 2003 amendments to the Parentage Act that incorporated references to section 609 of the Marriage Act and the legislative history of those amendments. Fisher, 221 Ill.2d at 116, 302 Ill.Dec. 542, 849 N.E.2d 334. It is our supreme court's reference to that legislative history that signifies to us that it intended its holding in Fisher to only apply to cases in which the never-married custodial parent sought removal from the state after a custody order existed or a parentage action had been filed.
The Fisher court referenced a portion of Representative Black's comments when discussing the 2003 amendments to the Parentage Act. Fisher, 221 Ill.2d at 116, 302 Ill.Dec. 542, 849 N.E.2d 334. Apparently, the Fisher court put great emphasis on these comments. Additional comments regarding the amendments include the following:
"[Rep.] Black: * * * But basically, for a noncustodial parent who did not marry the custodial parent, but has faithfully executed all orders of child support and what have you, will he then have standing to go to court or could be she, will the noncustodial parent then have so ... no have standing to go to court when the custodial parent says, hey, I'm moving to California and that's just the way it is.
[Rep.] Fritchey: What Senate Amendment 4 does is actually clarify the intent of this by providing a list of factors that the court can consider when deciding to enjoin the removal. All those factors include the extent of involvement with the child or the person seeking to enjoin removal, the likelihood that parentage would be established if there was a question of the parentage and the impact on the child. So, what we've tried to do is flush this out. So, does it address every bad situation that could arise?
[Rep.] Black: No.
* * *
[Rep.] Black: All right. So, in summation, it's fair to say for a noncustodial parent who is ... who was ... is not or was never married to the custodial parent, at least this ge ... but has accepted parentage, signed the registry and is making all, any and all court appointed payments. At least it gives the noncustodial parent a, I won't say the same right, but a similar standing to go to court and question the removal of the child or children, as the case may be, to another state if there's no apparent reason for the move." (Emphasis added.) 93d Ill. Gen. Assem., House Proceedings, May 27, 2003, at 68-70 (statements of Representatives Black and Fritchey).
Our supreme court thought the legislative history of the 2003 amendments significant enough to quote Representative Black in the Fisher opinion. Fisher, 221 Ill.2d at 116, 302 Ill.Dec. 542, 849 N.E.2d 334. The debate on the floor that day suggests that the legislature intended section 609 of the Marriage Act to apply only in cases in which the noncustodial parent "signed the registry and is making all, any and all court appointed payments." This presupposes, of course, that before the permissive removal provisions of section 609 are applied, an action must exist. Obviously, there can be no "court appointed payments" if no action ever existed.
The Fisher court noted that "a custodial parent who removes children from the state without having first at least requested leave could potentially be subjected to contempt proceedings." Fisher, 221 Ill.2d at 117, 302 Ill.Dec. 542, 849 N.E.2d 334. If there are no proceedings in place at the *441 time the custodial parent moved from the state, from whom are they to "request leave?" Furthermore, if no action was pending or prior order in place at the time of removal, the custodial parent would not be subject to contempt proceedings.
In a hypothetical, but common situation, an unmarried custodial mother never sees or hears from the child's biological father, or even knows where he is. Would it not create an absurd result to require her to file a new action in Illinois to seek permission to move to another state to go to college? Moreover, if every custodial parent had to seek permission under section 609 of the Marriage Act before moving out of state, what would be the purpose of enacting section 13.5 of the Parentage Act? A noncustodial parent would not need to enjoin a custodial parent from leaving the state as the custodial parent could not do so until he/she satisfied his/her burden under section 609 of the Marriage Act. What would be the purpose of section 13.5? We find that the trial court erred in applying section 609 of the Marriage Act and remand for the court to apply section 13.5 of the Parentage Act.
Finally, petitioner argued to this court that we must affirm the trial court's ruling so he can explore, at a hearing, whether Traci did, in fact, leave the state with the minor prior to the initiation of his action. We find this contention somewhat disingenuous as petitioner pled in his motion for immediate return of the minor child that Traci took the minor child to the state of Arizona on March 8, 2008. Moreover, by the time petitioner filed his parentage action seeking to establish a declaration of custody for the minor, he had already lived apart from the minor for more than eight months and the minor was 21 months old. There is no indication in the record that petitioner supported the minor financially, or in any other manner, during those eight months.
We note in passing that even had section 609 applied, it would seem that the better procedure would have been to take evidence on the minor child's best interest before simply ordering the immediate return of the minor child to the state. The child has been in Arizona since March of 2008. A court order that uproots a child of this age, possibly only to end up returning to Arizona after a hearing, seems to unnecessarily disrupt the minor child's life. There appears to be no good reason why a court should not consider a minor child's best interest when determining how to address the minor child's best interest. We note that it seems unlikely that a two-year-old child is going to have much to offer in the way of testimony or evidence at a best interest hearing. Nonetheless, if, and only if, the court determined that it was necessary for the minor child to be in the courtroom, does it make sense to order the return of the child before having a best interest hearing in light of the facts of this case?

CONCLUSION
For the foregoing reasons, the judgment of the circuit court of Will is reversed, and the cause is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
O'BRIEN, P.J., and LYTTON, J., concur.