**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 240476-U

Order filed December 17, 2024

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| *In re* PARENTAGE OF C.C., a Minor | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| (Edward Cochran, | ) | Du Page County, Illinois, |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | Appeal No. 3-24-0476 |
| v. | ) | Circuit No. 23-FA-249 |
| | ) | |
| Elizabeth Moeller, | ) | Honorable |
| | ) | Michael H. Burton, |
| Respondent-Appellant). | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Presiding Justice McDade and Justice Holdridge concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The court did not err by applying section 502(a) of the Illinois Parentage Act. The court did not abuse its discretion by ordering that the minor child be returned to the State of Illinois.

¶ 2     Respondent, Elizabeth Moeller, appeals from the Du Page County circuit court's order requiring that she return the minor child, C.C., to Illinois. Moeller argues that the court should not have applied section 502(a) of the Illinois Parentage Act of 2015 (Act) (750 ILCS 46/502(a) (West 2022)) because it did not have jurisdiction to interfere with her fundamental right to make

decisions for C.C. when section 802(c) of the Act (*id.* § 802(c)) allocated all parental rights to her. Moeller further argues that the court abused its discretion by ordering C.C. to be returned to Illinois under section 502(a) of the Act. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        On April 28, 2023, petitioner, Edward Cochran, filed a petition for temporary and permanent allocation of parental responsibilities regarding C.C. The petition alleged that Moeller and Cochran were never married but had been in a relationship which resulted in the birth of C.C. It further alleged that the parties executed a voluntary acknowledgement of paternity (VAP) establishing Cochran as the father of C.C. Moeller and Cochran had lived together with C.C. but Moeller moved out and took C.C. with her shortly before Cochran filed his petition. After discovering that Moeller had taken C.C. to Arizona, Cochran filed a petition for return of the minor child and temporary allocation of parental responsibilities. Following a pretrial conference, Cochran withdrew his petition for return of the minor child and temporary allocation of parental rights. The court adjudicated Cochran the father of C.C. and appointed Kathleen Kenny as guardian *ad litem* for C.C. Cochran filed a new petition for return of the minor child and temporary allocation of parental responsibilities. The matter proceeded to an evidentiary hearing on July 23, 2024.

¶ 5        At the hearing, Kenny testified that she had meetings with each of the parties and that she spoke to the maternal grandmother and paternal grandparents. She stated that it was her recommendation that C.C. be returned to Illinois. Kenny noted that C.C. had been in Arizona for approximately one year but that he had resided in Illinois for the first two years of his life. She said that there were a few reasons for her recommendation and noted that one was the fact that C.C. was taken out of Illinois by Moeller without Cochran's consent or knowledge after they had

resided together with C.C. for the first two years of his life. Kenny further noted that C.C. had a lot of developmental and physical limitations, including significant vision issues and possibly autism. Kenny stated that C.C. was predominately nonverbal. Between his vision issues and being nonverbal, it is difficult for C.C. to have any meaningful interaction with Cochran on Zoom or over the telephone. Kenny believed that in order to have a positive relationship with each of his parents, it was essential for C.C. to have regular, frequent interaction with both parents.

¶ 6    Kenny testified that the parties differed in what each stated Cochran's involvement was with C.C. The parties were residing together in a one-bedroom apartment when C.C. was born and continued to live together until Moeller moved out of state with C.C. after he turned two. Cochran worked from home and Moeller was a stay-at-home mom. At some point, Cochran began working remotely from his parents' home. He told Kenny that when he returned home he was then responsible for taking care of C.C. throughout the evening. Moeller disagreed with Cochran's statement and said Cochran did not interact with or provide caretaking for C.C. Moeller testified at the hearing and acknowledged that Cochran went to some pediatric appointments for C.C. Kenny testified that Moeller's mother told Kenny that Moeller took care of C.C. the majority of the time. Kenny believed that it would be nearly impossible for Cochran to not have had daily interaction with C.C. given the close living quarters. Kenny testified that the parties entered a VAP shortly after C.C. was born. The VAP did not establish what rights Cochran had other than he was a parent and had parental rights. The VAP did not allocate parenting time or decision-making authority. Kenny stated that Moeller was a registered nurse and that prior to C.C.'s birth she earned enough to support herself. Moeller told Kenny that she had considerable savings from her many years of nursing. Moeller had not worked since moving

3

to Arizona and lived rent free in a trailer her mother owns. Moeller also received food stamps, and her mother provided her with a car. Essentially, Kenny stated that Moeller currently had the luxury of not having to work and being home with C.C. but that she did not view Moeller having to work to support herself in the ordinary course as a hardship.

¶ 7        Cochran testified that when he came home from work on April 19, 2023, Moeller and C.C., as well as most of Moeller's and C.C.'s belongings, were gone. Cochran spoke to Moeller the next day, but she would not tell him where she or C.C. were. He did not find out that they were in Arizona until November 2023. Cochran stated he was living with his parents. If C.C. was returned to Illinois he would also reside at his parents' house and would have his own room there. Cochran stated he would have C.C. evaluated to determine what therapies he may need.

¶ 8        Moeller testified that she has resided in Arizona since April 19, 2023. She stated that Cochran had become verbally and emotionally abusive towards her in front of C.C. She was concerned about C.C.'s well-being because when Cochran would become abusive, C.C. would scream and cry. Leading up to the time she left Cochran, these incidents were more frequent, about twice a month. The last instance was a week before she left. She had a safe and stable environment for C.C. in Arizona because her mother had a place for her to live there for free. Moeller enrolled C.C. in school and pediatric therapy. C.C. has an individualized education plan (IEP). Living in Arizona, Moeller's costs were minimal. Moeller's mother provided her with a place to stay and a vehicle and helped with utilities. Moeller stated that she would return to Illinois if the court ordered C.C. to return and stated it would be a financial hardship for her to return to Illinois. Moeller would have to incur the costs related to housing, a vehicle, and third-party child care for C.C. Moeller testified that she did not let Cochran see C.C. in Arizona until there was a court order requiring her to and did not tell Cochran she was moving to Arizona.

¶ 9    The court heard arguments from the parties. Moeller argued that pursuant to section 802(c) of the Act, Moeller was presumed to have all the parenting rights such that when she moved to Arizona she was the sole decision-maker for C.C. Moeller further argued that there is a presumption that a fit parent will act in the best interest of the child and the court cannot interfere with the parent's fundamental right to make decisions for the child except in limited circumstances not present. Moeller argued that based on these presumptions, the court could not interfere with her decision to move to Arizona. Cochran argued there was no such presumption and the parties stood on equal ground with the execution of the VAP.

¶ 10    The court rejected Moeller's argument regarding the impact of section 802(c) on the parties' rights as to removal of C.C. The court noted Kenny's recommendation that C.C. be returned to Illinois. The court further noted that there was no allocation judgment prior to Moeller leaving the state. The court found it troubling that Moeller did not provide any notice to Cochran before moving C.C. out of state. The court stated that it did not believe Moeller's allegations of verbal and emotional abuse. The court found that it was in C.C.'s best interest to be returned to Illinois. It found that there was a relationship established between Cochran and C.C. and that C.C. not being in Illinois would be detrimental to that relationship. The court also found that any financial hardship on Moeller could be overcome by her obtaining employment and C.C. being cared for by Cochran, including child support and other support the court could order. At the request of Moeller, the court included language in its written order, pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason for delaying enforcement or appeal of the order. Moeller appeals.

5

¶ 11                                II. ANALYSIS

¶ 12            Initially, we note that this court's jurisdiction does not lie with Illinois Supreme Court

Rule 304(a) (eff. Mar. 8, 2016), as this matter does not involve a final judgment. Rather, we have

jurisdiction pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. Nov. 1, 2017), as the order

requiring the return of C.C. to Illinois is an order granting an injunction.

¶ 13            Turning to the arguments, Moeller first argues that the court erred, as a matter of law, by

applying section 502(a) of the Act. She argues that per section 802(c) of the Act, she was

presumed to have all decision-making authority over C.C. and that by applying section 502(c),

the court invalidated that authority.

¶ 14            Section 802(c) of the Act provides that if a "parentage order or judgment" does not

contain provisions for child support or parenting time, "all parental responsibilities shall be

presumed to be allocated to the mother" unless the child resided primarily with the other parent

for at least six months prior to when the mother sought to enforce the order or judgment. 750

ILCS 46/802(c) (West 2022). Section 502(a) of the Act provides that

>           "In any action brought under this Act for the initial determination of parentage,
>
>           the allocation of parental responsibilities or parenting time, or for modification of
>
>           a prior allocation order or judgment or parenting time order, the court, upon
>
>           application of a party, may enjoin a party having physical possession or an
>
>           allocation order or judgment from temporarily relocating the child from this State
>
>           pending the adjudication of the issues of parentage, the allocation of parental
>
>           responsibilities, and parenting time." *Id.* § 502(a).

That section further states that when deciding whether to enjoin relocation of the child or order a

party to return the child to Illinois, the court shall consider factors including, but not limited to,

6

(1) the extent of previous involvement with the child by the party seeking return of the child; (2) the likelihood parentage will be established; and (3) the impact on the financial, physical, and emotional health of the party being ordered to return the child. *Id.* "Review of the propriety of a preliminary injunction order is generally for an abuse of discretion; however, when the trial court's ruling involves a question of law, the standard is *de novo*." *Jones v. Department of Public Aid*, 373 Ill. App. 3d 184, 193 (2007). "An abuse of discretion occurs only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Seymour v. Collins*, 2015 IL 118432, ¶ 41.

¶ 15     Regardless of whether Moeller was allocated parental responsibilities, as she argues, it would still have been proper for the court to apply section 502(a) of the Act. Specifically, that section provides that it can be applied when modification of a prior allocation is sought and that the court can enjoin a party having an allocation order. Such provisions clearly indicate that even if one parent is allocated parental responsibilities the court can still apply section 502(a) and order that parent to return a child to Illinois. See *e.g.*, *In re Parentage of R.B.P.*, 393 Ill. App. 3d 967, 974 (2009) (stating that section 13.5 of the Parentage Act of 1984, which is now section 502(a) of the Act, "is the only mechanism available to the court to order the return of a minor child in situations such as this where the parents were never married and no proceedings whatsoever existed prior to the custodial parent leaving the state with the child"); see also generally *Hedrich v. Mack*, 2015 IL App (2d) 141126.

¶ 16     Moeller further argues that the court abused its discretion by ordering that C.C. be returned to Illinois. We disagree. The court heard evidence and considered the section 502(a) factors in finding that C.C. should be returned to Illinois. We note that as parentage has been established, the only disputed factors are Cochran's involvement and relationship with C.C. and

7

any financial, emotional, or physical impact to Moeller due to C.C. being returned to Illinois. There was evidence presented that Cochran was involved with the child on a daily basis for the first two years of C.C.'s life and up until Moeller took C.C. to Arizona without Cochran's knowledge or consent. This evidence supports the court's determination that there was a relationship between Cochran and C.C. Although Moeller disagreed that Cochran was involved with the child, the court was free to weigh the evidence as it saw fit and this court will not reweigh the evidence on appeal. See *Jameson v. Williams*, 2020 IL App (3d) 200048, ¶ 51 ("It is well settled that a reviewing court's function is not to reweigh the evidence or assess witness credibility and set aside the circuit court's decision simply because a different conclusion may have been drawn from the evidence."). Additionally, although there was evidence that indicated Moeller could be better off financially if she remained in Arizona, the court found that any potential financial hardship in returning to Illinois could be overcome by Moeller obtaining employment, as she was willfully unemployed, or by potential orders of the court, such as child support. Further, the court did not believe Moeller's allegations of emotional abuse against Cochran and we defer to the court's credibility determinations. See *id.* In sum, the court considered the recommendation of the guardian *ad litem*, made specific findings of fact, determined the credibility of the witnesses, and explained its reasoning. Based on the foregoing we cannot say that the court's decision to order the return of C.C. to Illinois was arbitrary, fanciful, or unreasonable or that no reasonable person would have made the same decision. Therefore, we conclude the court did not abuse its discretion by ordering that C.C. be returned to Illinois.

¶ 17                                                III. CONCLUSION

¶ 18            The judgment of the circuit court of Du Page County is affirmed.

¶ 19            Affirmed.